The next matter is Case No. 15-2213, Cook & Co. Insurance v. Volunteer Firemen's Insurance. Good morning, Your Honors. May it please the Court, my name is Bart Keemstrup and I'm representing the Plaintiff Appellant, Cook & Co. Insurance Services, Inc. on this appeal of the dismissal of the pro-complaint for failure to state a claim. This is a commercial case involving what we allege were tortious business practices by the defendants, Volunteer Firemen's Insurance Services, Inc. The players in this case are both broadly speaking in the insurance business and more narrowly speaking in the business of injured on duty insurance for municipalities, mostly in Massachusetts, under a law providing that policemen and firemen injured on duty in Massachusetts are insured through the towns for their medical costs and so forth. The Cook & Co. role in this is essentially the local agent to the municipalities. It has the relationship with Danvers and Harwich and so forth. What's illegal about one competitor calling up the employees of another competitor and hiring them all away when they don't have non-compete agreements? What's tortious is not the hiring them away and that was sort of, if I wrote down three different points of disagreement with the district judge, the focus on the hiring away is I don't think the essential. What is the tort of the wrongful act? The wrongful act is this, Your Honor. Mr. McNamee was the director of the Claims Administration Services for Cook & Co. He was the top guy in claims and he therefore had a duty of loyalty to his employer, Cook & Co., as long as he was employed by Cook & Co. One year before he was hired away by the Gowrie Group, who are the agents of VFIS, one full year he went and spoke to Mr. Preston at the Gowrie Group and said, Look, here's what my boss is planning on doing. He's planning on moving injured on-duty insurance away from you. He's planning on competing and I'm just telling you that in order that we can figure out a way to stop this. They then begin discussions a year before the next renewal. The employee of Cook and the employee of Gowrie began engaging in conversations and discussions that were in breach, and normally in breach, by everybody of McNamee's duty of loyalty to his employer. Let's start dissecting that. First of all, do I correctly understand that Massachusetts law governs this diversity case? Yes, you are. Do I also understand that McNamee is an Atwill employee? Yes, you are. The SJC has said that there's nothing wrong with an Atwill employee seeking out other employment opportunities and discussing the possibility of his employment with competitors. Is that correct? That's correct, you are. What exactly does the complaint allege about this duty of loyalty? The complaint alleges that McNamee had a duty of loyalty to his employer. That includes not disclosing confidential information about your employer's plans to a competitor. Right. And no matter what he's allowed to do or not to do as an employee at will, he's not allowed to breach his duty of loyalty and warn the competitor as to what's going to happen. But the complaint doesn't say anything about this defendant knowing that McNamee had a duty of loyalty or that McNamee was breaching it and making the disclosure. The complaint alleges that the Gowrie Group knew about this duty of loyalty and that the Gowrie Group knew he was breaching it. As I go back to the points of disagreement with the district judge, who said much to paraphrase your honor, but what did this defendant do? Well, what this defendant did was, first of all, Gowrie and Preston are agents of the FIS. They're agents for all purposes. They're agents for the purposes of writing and administering insurance contracts. That doesn't mean that everything Gowrie does is that the FIS is vicariously liable for. And the complaint certainly doesn't allege that that kind of broad scope of agency relationship exists. It doesn't allege facts from which we could glean that. I think the agency is best described as it's within the scope once we carry it to the next step. What does Gowrie do with the information? First, they give it to the FIS directly in writing. And they say, this guy is on the inside. He's talking to us. Here's the threat to your company. That doesn't answer my question. What does the complaint allege about the FIS knowing that that information was unlawfully or tortiously obtained, if it was? I believe there's an exhibit to the complaint, Your Honor, that shows Preston of Gowrie corresponding with the FIS in New Jersey saying, we've got this guy. He's telling us inside information. It's going to hurt you. It's going to hurt us. And what should we do about it? And that's when VFIS says, well, why don't you hire him? So there's clearly an exchange of information between, yeah. So that would be Preston's email to VFIS, which begins on, well, I think the same thing is in appendix 22 and 23. With all due respect, counsel, you're not answering my question. I've read the exchange of emails. What is there that shows that VFIS knew that this information, that it was being given by Gowrie, had been obtained tortiously or unlawfully? Because Preston in the email tells VFIS, he works for them, but he's loyal to us, and I'm getting this information, and this is the threat to us. I think VFIS being told that they're talking to a current employee of Cook who's an insider, I don't think there's any standard of pleading. Once you plead that they were directly told this, that somehow you're not charged with knowledge that this is a breach of duty of loyalty by the employee. And certainly they wouldn't want their director of claims giving business information to someone else. And certainly they wouldn't want their director of claims conspiring to hurt their company. You described the duty of loyalty almost as if it's a fiduciary duty. All employees have... It's a fiduciary duty of loyalty, I guess is the best way to say it. And it's only upper-level employees, and that's why it's pled this way, because McEnany was the director of the business department within Cook that's most important here. So you seem to be saying that if Company A talks with a senior person of Company B about that senior person leaving Company B and coming to Company A, that if that senior person during those conversations or before those conversations discloses any competitive business information, that that person is both breaching something for which they could be sued and Company A is in breach by continuing those conversations. Company A is aiding and abetting a breach of fiduciary duty. That's our position, Your Honor. And what's your best case in Massachusetts that would hold that? Because a lot of discussions about... These people are at-will employees. They're free to go talk with companies and negotiate deals. What's your best case that would show that type of conduct violates Massachusetts law or is actionable? It's one of the cases in your brief. It is in my brief, Your Honor. I don't have my finger right on it. So the two... The court's already raised with me two of the big items I have here. One, the agency argument, which I think was overlooked by the district judge. The other one is the issue of what was the improper conduct. And I guess just finally, the improper motives of or the improper means used by VFS through its agent to confuse customers and as to who was able to provide claims rep services and that ultimately the district judge said no objective customer could be fooled by this. May I just finish the sentence? Yes. Thank you. But ultimately, the complaint pleads and actually discovery of a related case shows that actual customers were fooled by this. Thank you. May it please the court, my name is James Wagner and I represent the appellee defendant below volunteer fireman's insurance services. I have with me Catherine Kelter. He assisted me on the brief. It's a pleasure to be before you. Frankly, I wish that I was before you in this august moment in a better case. Truthfully, this is a strike suit. Pure and simple. The plaintiff appellant here seeks to use litigation as a weapon in order to maintain its 11-year stranglehold on third-party claims administration in Massachusetts on its injured on-duty insurance policies. It's freezing out a competitor, local competitor, Gowrie, Barton, and Brett of Rowland. Volunteer fireman's has been collateral damage in that fight for those three years for having chosen to do business with Gowrie and not with Cook & Co. The issue here is pretty simple. It's whether Judge Stearns correctly determined twice that none of the allegations of misconduct give rise to a civil conspiracy, to wrongful interference with advantageous relations, or to Chapter 93A violation. Let me back up for a moment. Volunteer fireman's is a Pennsylvania company that provides the insurance side of the injured on-duty coverage. It does not provide claims administration to cities and towns. That's what Cook & Co. does and what Gowrie wants to do. Volunteer fireman's has no Massachusetts presence. The employees that were hired away from Cook & Co. do not work for volunteer fireman's. They do not work in Pennsylvania where my client is located. Instead, volunteer fireman's uses Gowrie, Barton, and Brett, an independent Rhode Island insurance broker that represents 25 other insurance companies other than volunteer fireman's, to sell that insurance. Cook & Co., also an independent insurance broker, in addition to selling injured on-duty insurance, it also handles claims from municipalities within high deductibles on those insurance policies. Gowrie, the entity in Rhode Island, decided they wanted to get into the claims side and hired three of nine of Cook & Co.'s employees doing that type of claims administration. In connection with third-party claims administration, do I correctly understand that the third-party claims administrator works for the insured, that is for the municipalities, rather than for the insurer? Correct, Your Honor. So the allegations against volunteer fireman's boil down to two things. The allegation of civil conspiracy is this, this email from a volunteer fireman's executive that says, Maybe you guys should hire Roy? Maybe you guys should hire Roy? That's civil conspiracy in the allegations of this complaint. Of course, Roy McNamee, the Roy in this question, the suggestion, does not have a non-compete, does not have a non-solicitation agreement, wants to get out of Cook & Co. because he's not getting well paid, he's not getting well treated. As alleged in their own complaint, he wants out. And they're saying that it's improper for us to suggest that, well, perhaps they ought to hire him. There wasn't a non-compete, but do you disagree that under Massachusetts law, he had a duty of loyalty not to disclose confidential company information to a competitor? Yes, Your Honor, I would agree that that is Massachusetts law, that a high-level executive cannot disclose confidential information. There is no allegation, however, that any of this information that he supposedly disclosed, and just as was pointed out earlier, but I'll tell you, this is not information that was disclosed to volunteer firemen that they solicited, that they asked for, but rather was provided to them. It's information that this fellow is unhappy, that they're not getting as much premium anymore. That's information that volunteer firemen would have, of course, of its own information, since it's in fact selling and writing these policies. So they already knew that Cook & Co. was not selling as much volunteer firemen's insurance anymore. And if that level of information about why an employee wants to leave employment, if that amount of information is a disclosure of confidential information that they have financial duty not to provide, it would be impossible to get a new job. I would be unable to explain why I'm leaving my current firm if I wasn't able to say something about why I'm unhappy. That's all that is conveyed on to volunteer firemen, that this fellow is unhappy, he wants to leave, and the suggestion back is, maybe you guys should hire him. That is not in any way a conspiracy, it's not a forced act in furtherance of a conspiracy, and the information that was supplied to volunteer firemen through Gowrie was not in any way confidential, was not a breach of fiduciary duty. The second allegation, of course, is that the information included in announcements of this new claims team at Gowrie was somehow so false and so it was a tortuous interference with advantageous relations with these municipalities. And as Judge Stearns determined twice, there was nothing in these announcements or this letter that covered the announcement that in fact was false. That's the first element of false information. They want to jump right past that, Cook & Co. wants to jump right past that element of falsity and want to go right to whether there's actual confusion and damages. They can't argue that the information is false. And in fact, as Judge Stearns pointed out in his decision, the very letter that they say was false and gave the impression to some unidentified municipalities that Cook & Co. was going out of business says, if you don't want to do this, you can go and use Cook & Co. as you have always done. It seems to me that that advertisement, that covering letter, was even required to provide clear information that you have, in fact, a choice. You can go with Gowrie with our new claims team or you can go with Cook & Co. Judge Stearns got to the heart of whether any of this alleged conduct was unlawful. He didn't go to the somewhat, perhaps, hazy issue of vicarious liability, as improbable as that might otherwise be. But he went right to the issue of whether planning a departure from Cook & Co., whether that was unlawful, it's not under Massachusetts law. Hiring three of nine of Cook & Co.'s employees, is that unlawful? No, it's not unlawful in Massachusetts law. And it's providing truthful information about a new capacity within your business. Is that unlawful under Massachusetts law? No, it's not. Essentially, Cook & Co. wants to do, through litigation, what it didn't do through contract. It did not get non-competes with any of these employees. It didn't pay for that, but it wants it in this litigation. It wants to have an exclusive claims handling agreement, but it doesn't have that and it didn't pay for it. This litigation should not be used in that fashion. This case has gone on long enough. The initial case against Gowrie was filed three years ago. The second case against, and now before Judge Stearns, was filed two years ago. During that two years of hot litigation between Cook & Co. and Gowrie, all they found against volunteer firefighters were those two allegations that I just talked about. Maybe you guys should hire Roy and the advertising. These are allegations, just as Judge Stearns twice determined, are not sufficient under Massachusetts law to establish the torts that they've pled here in this case, and therefore the case was properly dismissed. We've also argued, and we're probably running out of time in order to get into this fully, but there's also a race judicata issue here significant. Judge Stearns made all of the necessary predicate findings in order for race judicata to apply. He determined, and it's found in the appendix at page 128, that these are virtually identical claims based on essentially the same facts, again on that same page, and his second decision literally quotes from his first decision in analyzing these very claims. But his first decision was a dismissal specifically without prejudice. Yes, Your Honor. And I believe we've held that that doesn't qualify as a final judgment for the application of race judicata under Massachusetts law. I know, Your Honor. This court has actually determined it the other way, and the U.S. Supreme Court has determined it the other way. Judge Scalia wrote in the Semtec case that Rule 41 does not govern the applicability of race judicata. There's a really good roadmap case on this race judicata issue within the First Circuit that we did not quote because it's not a 12B6 case. It's a 23.1 presentment to the Board of Directors before you bring an action against a corporation called Sonus Networks. So what's the difference between a dismissal with prejudice and one without? So a dismissal without prejudice says you may come back to this court, to this particular court, and refile this action if you come up with new facts and new theories that you did not plead in your first case. So what the Semtec case says is that Rule 41 essentially provides a gate to the courthouse as to whether it can be brought back again. And in this particular instance, the without prejudice inclusion in the dismissal said, if you've got something more, show me. You can come back and show me something different than you've done before, but it doesn't negate what the judge did in making a substantive determination that this set of allegations does not rise to the level of the courts in Massachusetts necessary to bring an action. Is that case cited in your brief? Sorry? Is that case cited in your brief? So the Sonus case, which I think was a very good roadmap case, is not. So that's 499. Send it to us on a Rule 28J letter, please. Okay, yes, Your Honor. We'll do. So, again, we did not rule it because it's not a 12B6 case, but it is very helpful in terms of a roadmap of various elements in this circumstance. So thank you, Your Honors. Thank you.